UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

4SIGHT Supply Chain Group, LLC,

　　　　　　Plaintiff,

　　v.

Richette Gulitus,

　　　　　　Defendant.

Civil Action No. 23-1687
(MEF) (JSA)


OPINION and ORDER


### Table of Contents

I.    Background
      A.   Allegations
      B.   Procedural History: State Court
      C.   Procedural History: Federal Court
      D.   The Court's Approach
II.   General Legal Principles
      A.   Perspective
      B.   Burden of Proof
      C.   Standard of Proof
III.  Analysis
      A.   Injunctive Relief
      B.   Damages
IV.   Conclusion

\*       \*       \*

An employer sued its former employee in state court, alleging a violation of a non-compete agreement.

The employee removed the case to federal court, and the employer then moved to remand back to state court, arguing that not enough damages are in play to establish federal jurisdiction.

The United States Magistrate Judge accepted this argument, and the undersigned does, too.

The motion to remand is granted.

\*       \*       \*

## I.   **Background**

### A.   **Allegations**

An employee at a company signed a non-compete agreement. See Notice of Removal, Exhibit A, Complaint ("the Complaint") at ¶ 14. Under the agreement, the employee:

> the employee "shall not, during the Restricted Period, directly or indirectly, on Employee's behalf, or for or on behalf of any other person, firm, corporation, or entity, in competition with the Company; . . . provide or conduct services . . . of the same or substantially similar type as Employee provided to the Company[.]"

Id. at ¶ 18.

The employee left the company, to work for one of its clients. See id. at ¶ 18, page 5.

### B.   **Procedural History: State Court**

The company sued its former employee in state court, seeking: (1) damages under the non-compete agreement, and (2) an injunction, to restrain her from breaching the agreement. See id. at ¶ 32.

From here, the company is referred to as "the Ex-Employer" and the employee is referred to as "the Former Employee."[1]

---

[1]  The Ex-Employer is 4Sight Supply Chain Group, LLC.  The Former Employee is Richette Gulitus.

### C.   **Procedural History: Federal Court**

The Former Employee removed the case to federal court.  Her notice of removal invokes this Court's subject matter jurisdiction based on the diversity statute.  See Notice of Removal ¶¶ 3-5.

The Ex-Employer responded by filing a motion to remand.  It argues: there is no jurisdiction, because under the diversity statute the amount in controversy must exceed $75,000, see 28 U.S.C. § 1332(a)(1), but here it is less than that.  See Motion to Remand at 1-2.

The motion was referred to United States Magistrate Judge Allen.

Judge Allen prepared a thorough and thoughtful Report and Recommendation.  Judge Allen's conclusion: there is no jurisdiction here because the Former Employee did not carry her burden of showing the amount in controversy exceeds $75,000. See Report and Recommendation at 12.

The Former Employee objected to the Report.

The objection is now before the Court.

### D.   **The Court's Approach**

The Court first sets out the key legal principles here, see Part II, and then analyzes whether the amount-in-controversy test has been satisfied.  See Part III.  The Court concludes: it has not. Accordingly, there is no subject matter jurisdiction on the current record.  The objection to the Report and Recommendation is therefore denied and the motion to remand is granted.

## II.  **General Legal Principles**

Start the analysis with certain important overarching legal principles, related to perspective, see Part II.A, the burden of proof, see Part II.B, and the standard of proof, see Part II.C.

### A.   **Perspective**

The first important legal principle: for amount-in-controversy purposes, the value of the relief sought[2] is the monetary value

---

[2]  Recall that the Ex-Employer sought both damages and an injunction.  See Complaint ¶ 32.

of the relief from the plaintiff's perspective, not the
defendant's.  See In re Corestates Trust Fee Litig., 39 F.3d 61,
65 (3d Cir. 1994); Schuylkill Tp. v. CitySwitch, LLC, 2009 WL
2018531, at *4 (E.D. Pa. Jul. 13, 2009); Leonard Parnes Trucking
Corp. v. Ominpoint Commun'cs, 2013 WL 6002900, at *6 (D.N.J.
Nov. 12, 2013); 14B Wright & Miller §3708 (5th ed.).[3]

### B.  **Burden of Proof**

The second important legal principle is that the party invoking
federal jurisdiction bears the burden of establishing it.  See
Hertz Corp. v. Friend, 559 U.S. 77, 96 (2010); McNutt v. Gen.
Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

Here, that party is the Former Employee.  She was sued in state
court and is trying to trigger this Court's jurisdiction by
removing her case here.  See Rowland v. BISSELL Homecare, Inc.,
73 F.4th 177, 180 (3d Cir. 2023) (holding that the party seeking
to remove a case bears the burden of establishing federal
jurisdiction); Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144,
151 (3d Cir. 2009) (same); Frederico v. Home Depot, 507 F.3d
188, 193 (3d Cir. 2007) (same); accord 13E Wright & Miller
§3602.1 (3d ed.).[4]

---

[3]  When it comes to damages, the cited principle is all-but
invisible.  It does next-to-no work because when a plaintiff
seeks, say, $100 in damages, the monetary value is $100, whether
the perspective adopted is the plaintiff's (the $100 she might
get) or the defendant's (the $100 he might give).  But as to
injunctive relief, the cited principle can have real practical
importance.  Take, for example, a property owner that wants to
enjoin the operation of a nightclub, a nuisance-causing
neighbor.  In that case, the monetary value of the injunction
being sought will vary based on perspective.  It may be equal to
the full value of the business, from the vantage point of the
nightclub/defendant that will be entirely shut down if the
injunction is granted.  By contrast, from the perspective of the
neighbor/plaintiff, the value of the injunction is likely the
incremental value of the "peaceful enjoyment" of its property if
the next-door nightclub is shuttered.  That may be more than the
full value of the business, or less.

[4]  That the burden is on the party seeking removal can sometimes
spin off complex litigation dynamics.  For example, the
defendant seeking removal may sometimes be whipsawed --- between
(a) emphasizing the damages she caused (to succeed in removing

C.   **Standard of Proof**

Putting together the legal principles set out above in Part II.A
and Part II.B: to establish subject matter jurisdiction based on
the diversity statute, the Former Employee must show that, from
the Ex-Employer's perspective, the monetary value of the relief
sought is over $75,0000.[5]

Now fold in a final question: to what standard must the Former
Employee make her showing?

Congress answered this question in 2011.

Per that year's Federal Courts Jurisdiction and Venue
Clarification Act, the amount in controversy must be established
to a "preponderance of the evidence" standard.  See Federal
Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L.
No. 112-63, 125 Stat. 758 ("removal of the action is proper . .
. if the district court finds, by the preponderance of the

---

the case by clearing the amount-in-controversy hurdle), and (b)
downplaying those same damages (to succeed in getting a low-
damages outcome on the merits).  The plaintiff resisting removal
can vacillate, too, but in the opposite directions --- wanting
to minimize damages at time one (the removal stage), but to
foreground damages at time two (the merits stage).  This dynamic
is part of why removal law is especially focused on the danger
of gamesmanship.  See, e.g., In re Diet Drugs, 282 F.3d 220, 232
n.9 (3d Cir. 2002); Infinity Staffing Sols., LLC v. Paramount
Conversions, LLC, 2018 WL 2148869, at *3 (D.N.J. May 10, 2018).
And it is part of why the law in this area often allows for
limited, closely-managed discovery.  See McPhail v. Deere & Co.,
529 F.3d 947, 954 (10th Cir. 2008); Polanco v. Amguard Ins. Co.,
2018 WL 6380707, at *4 (D. Del. Dec. 6, 2018); Barnes v. State
Farm Mut. Auto. Ins. Co., 2004 U.S. Dist. LEXIS 7200, at *3-4
(E.D. Pa. Apr. 7, 2004).  (Another reason for allowing discovery
is that the defendant seeking removal may not know the ins and
outs of the plaintiff's case, and so may struggle, without some
discovery, to establish the amount in controversy.  Cf. Preston
Products LLC v. Innosonian Am., LLC, 2024 WL 278985, at *5 n.17
(D.N.J. Jan 25, 2024)).

---

[5]  The Former Employee seeks both damages and an injunction.  See
footnote 2.  The value of these, together, must equal $75,000.
See generally Synder v. Harris, 394 U.S. 332, 335 (1969);
Edwards v. Bates Cnty., 163 U.S. 269, 273 (1896); Suber v.
Chrysler Corp., 104 F.3d 578, 588 (3d Cir. 1997).

evidence, that the amount in controversy exceeds the amount specified in [the diversity statute]").

The referenced part of the statute plainly applies where, as here, three circumstances are present.[6]

The first is that the Court's jurisdiction has been invoked based on the diversity statute. See 28 U.S.C. § 1446(c)(2). It was here. See Notice of Removal ¶¶ 3-5.

The second circumstance is that the defendant's assertion of the amount in controversy has been "contested by the plaintiff" or questioned by the Court. Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 87-89 (2014). That happened here. See Motion to Remand at 2.

The third circumstance is that the prerequisites of 28 U.S.C. § 1446(c)(2)(A) have been met. These are that complaint seeks (a) nonmonetary relief or (b) "a money judgment," and the "practice" of the relevant state court "does not permit demand for a specific sum." Here, the Complaint seeks nonmonetary relief. See Complaint ¶ 32. And here, the Complaint also seeks "a money judgment," see id., and relevant state court is in New Jersey, which does not generally permit a "specific sum" demand. See Chinchilla v. Geodis Am., Inc., 2024 WL 943424, at *4 (D.N.J. Mar. 5, 2024); N.J. Ct. R. 4:5-2.[7]

Bottom line: Congress has established that preponderance of the evidence is the governing standard of proof here.

---

[6]  As to whether the statute also applies in other contexts, see footnotes 7 and 9.

[7]  Many courts seem to assume that the preponderance standard established by Congress in 2011 apply even when the prerequisites of 28 U.S.C. § 1446(c)(2)(A), described in the text, have not been met. See, e.g., Flavell v. Marshall, 2022 WL 17725399, at *1 (D.C. Cir. Dec. 16, 2022); Jean-Louis v. Carrington Mortg. Servs., LLC, 849 F. App'x 296, 299 (2d Cir. 2021); Borough of Carteret v. Consol. Rail Corp., 2018 WL 283733, at *2-3 (D.N.J. Jan. 3, 2018); Clean Label Project Found. v. Now Health Grp., Inc., 2021 WL 2809106, at *2 (D.D.C. July 6, 2021); George v. P.R. Wire Prods., Inc., 2021 WL 3560809, at *3 (D.V.I. Aug. 10, 2021). That question, though, does not need to be answered here. That is because the § 1446(c)(2)(A) prerequisites are established here.

6

To be sure, before 2011 other legal standards were applied ---
one of which asked whether, to a "legal certainty," the
plaintiff could not recover the jurisdictional minimum.  See
Frederico, 507 F.3d 188, 194, 196-97 (3d Cir. 2007) ("when it
appears to a legal certainty that the plaintiff was never
entitled to recover the jurisdictional amount, the case must be
dismissed") (cleaned up); see also Samuel-Bassett v. KIA Motors
Am., Inc., 357 F.3d 392, 398 (3d Cir. 2004); Judon v. Travelers
Property Casualty Co. of Am., 773 F.3d 495, 504-05 (3d Cir.
2014).

But this pre-2011 standard rested entirely on the Supreme
Court's decision in St. Paul Mercury Indemnity Co. v. Red Cab
Co., 303 U.S. 283, 289 (1938).

In turn, Red Cab rested on four cases: Barry v. Edmunds, 116
U.S. 550, 559 (1886); Wetmore v. Rymer, 169 U.S. 115, 128
(1898), Put-in-Bay Waterworks, Light & Ry. Co. v. Ryan, 181 U.S.
409, 431 (1901), Hampton Stave Co. v. Gardner, 154 F. 805, 806
(8th Cir. 1907).  See Red Cab, 303 U.S. at 289 n.13 (citing
these cases for the legal certainty test).

And each of these cases interpreted a removal statute that did
not set out the standard of proof that had to be satisfied to
meet the amount in controversy requirement.[8]

In that circumstance, the Supreme Court stepped in to "fill the
interstices" left behind by the statutory gap.  See generally
Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565 (1980)

---

[8]  The then-governing statute that was before the Red Cab Court:
"[i]f in any suit commenced in a district court, or removed from
a State court to a district court of the United States, it shall
appear to the satisfaction of the said district court, at any
time after such suit has been brought or removed thereto, that
such suit does not really and substantially involve a dispute or
controversy properly within the jurisdiction of said district
court, or that the parties to said suit have been improperly or
collusively made or joined, either as plaintiffs or defendants,
for the purpose of creating a case cognizable or removable under
this chapter, the said district court shall proceed no further
therein, but shall dismiss the suit or remand it to the court
from which it was removed, as justice may require, and shall
make such order as to costs as shall be just."  28 U.S.C. § 80
(1911).  The quoted statute was not meaningfully different
during the period it was being interpreted by the cases Red Cab
rested on.  See Red Cab, 303 U.S. at 287-88.

("It is a commonplace that courts will further legislative goals by filling the interstitial silences within a statute or a regulation."); <u>United States</u> v. <u>Kimbell Foods, Inc.</u>, 440 U.S. 715, 727 (1979) ("when Congress has not spoken . . . federal courts" sometimes "fill the interstices of federal legislation"); <u>see</u> <u>also</u> <u>U.S. Bulk Carriers, Inc.</u> v. <u>Arguelles</u>, 400 U.S. 351, 354 (1971) (similar); <u>Southern Pacific Co.</u> v. <u>Jenson</u>, 244 U.S. 205, 221 (1917) (Holmes, J., dissenting); Selected Writings of Benjamin Nathan Cardozo 136 (Hall ed. 1947) (describing courts operating within "interstitial limits").

But the gap in the removal statute is gone.  Congress sealed it in 2011, by establishing the preponderance of the evidence test. The legal certainty standard was a court-created plug of a hole that no longer exists.  That standard is therefore no longer relevant, and the Court applies here the preponderance of the evidence standard established by the United States Congress for cases like this one.

Most federal courts have come to the same conclusion, holding that the legal certainty test has been pushed aside by the preponderance of the evidence test in diversity cases of the sort in play here.  <u>See</u>, <u>e.g.</u>, <u>Young</u> v. <u>Bloomingdale's Short Hills</u>, 2021 WL 4170025, at *2 (D.N.J. 2021); <u>Clean Label Project Found.</u>, 2021 WL 2809106, at *2; <u>George</u>, 2021 WL 3560809, at *3; <u>Manhattan Telecomms. Corp.</u> v. <u>Granite Telecomms., LLC</u>, 500 F. Supp. 3d 255, 260-61 (D. Del. 2020); <u>Scaife</u> v. <u>CSX Transp., Inc.</u>, 2019 WL 3353727, at *3-5 (W.D. Pa. July 25, 2019); <u>Lowe</u> v. <u>State Farm Fire & Cas. Co.</u>, 2016 WL 818658, at *4 (M.D. Ala. Feb. 16, 2016) (report and recommendation adopted 2016 WL 821132).

Other federal courts have also applied the preponderance of the evidence standard in diversity cases, but without explicitly noting that the legal certainty standard has been displaced. <u>See</u> <u>Brown</u> v. <u>Nationwide Ins. Co.</u>, 2023 WL 4174064, at *4 (10th Cir. 2023); <u>Flavell</u>, 2022 WL 17725399, at *1; <u>Acad. of Country Music</u> v. <u>Cont. Cas. Co.</u>, 991 F.3d 1059, 1068-69 (9th Cir. 2021); <u>Jean-Louis</u>, 849 F. App'x at 299; <u>Statin</u> v. <u>Deutsche Bank Nat'l Tr. Co.</u>, 599 F. App'x 545, 547 (5th Cir. 2014); <u>Chinchilla</u> v. <u>Geodis Am., Inc.</u>, 2024 WL 943424, at *4 (D.N.J. Mar. 5, 2024); <u>Kovalev</u> v. <u>Lab'y Corp. of Am. Holdings</u>, 2022 WL 4586123, at *2 (E.D. Pa. Sept. 29, 2022); <u>Dsida</u> v. <u>Esposito</u>, 2021 WL 3810242, at *2 (W.D. Pa. Aug. 26, 2021); <u>Hill</u> v. <u>Kalahari Resort PA, LLC</u>, 2021 WL 5494288, at *3-4 (M.D. Pa. Nov. 23, 2021); <u>M3 USA Corp.</u> v. <u>Haunert</u>, 2021 WL 1894847, at *1 n.1 (D.D.C. May 11, 2021); <u>Dragoo</u> v. <u>Quest Diagnostics Inc.</u>, 2019 WL 13397467, at *2-3

(D.N.J. Nov. 26, 2019) (report and recommendation not ruled on by the district court because the case was voluntarily dismissed); Borough of Carteret, 2018 WL 283733, at *2-3; Dorley v. Save-A-Lot, 2016 WL 6213074, at *2-3 (E.D. Pa. Oct. 25, 2016); 14AA Wright & Miller §3702.1 (4th ed.); 15A Moore's Federal Practice - Civil § 102.1079[3] (2024).[9]

---

[9]   Some courts have gone further, and have held that 28 U.S.C. § 1446(c)(2)(B) also displaced the legal certainty test in the Class Action Fairness Act ("CAFA") context. See La Stella v. Aquion, Inc., 2020 WL 7694009, at *5 (D.N.J. Dec. 28, 2020); Karlberg v. Santander Bank, N.A., 2017 WL 4810800, at *3-4 (E.D. Pa. Oct. 25, 2017); Grace v. T.G.I. Fridays, Inc., 2015 WL 4523639, at *4-6 (D.N.J. July 17, 2015); Alegre v. Alt. Cent. Logistics, 2015 WL 4607196, at *2-3 (D.N.J. July 13, 2015).  And in a similar vein, many courts have simply applied the preponderance of the evidence standard to post-2011 CAFA cases, without affirmatively addressing whether the preponderance test displaced the legal certainty test.  See Leflar v. Target Corp., 57 F.4th 600, 603-604 (8th Cir. 2023); Phelps Oil & Gas, LLC v. Noble Energy Inc., 2023 WL 6121016, at *2 (10th Cir. Sept. 19, 2023); Sabrina Roppo v. Travelers Com. Ins. Co., 869 F.3d 568, 579 (7th Cir. 2017); Scott v. Cricket Comms., LLC, 865 F.3d 189, 194-195 (4th Cir. 2017); Carter v. Westlex Corp., 643 F. App'x 371, 374-75 (5th Cir. 2016); Graiser v. Visionworks of Am., Inc., 819 F.3d 277, 282 (6th Cir. 2016); Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015); Dudley v. Eli Lilly & Co., 778 F.3d 909, 913 (11th Cir. 2014); Vaccaro v. Amazon.com.dedc., LLC, 2019 WL 1149783, at *3 (D.N.J. Mar. 13, 2019); Rosenblatt v. Nuplexa Grp., Inc., 2016 WL 3546579, at *2-5 (D.N.J. June 29, 2016); Crookshanks v. Healthport Techs., LLC, 2016 WL 4099296, at *2 (S.D. W. Va. Aug. 2, 2016); Kendall v. CubeSmart L.P., 2015 WL 7306679, at *2-5 (D.N.J. Nov. 19, 2015). The Third Circuit has not followed this approach.  Just before the Supreme Court handed down Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81 (2014), its key decision in this area, the Third Circuit held that the legal certainty standard continues to apply in CAFA cases.  See Judon, 773 F.3d at 503-05.  But regardless of whether Dart does or does not impact Judon in the CAFA context, Judon itself explicitly left open the question of whether the preponderance of the evidence standard put in place by Congress in 2011 displaced the Red Cab legal certainty standard in ordinary diversity cases like this one. See id. at 503 n.7.  The Court's conclusion: the Congress did push aside the Red Cab test in 2011, for the reasons set out in the text.

In sum: the Court holds that to establish subject matter jurisdiction based on the diversity statute in cases covered by 28 U.S.C. § 1446(c)(2), the party that seeks removal must, when challenged, show to a "preponderance of the evidence" standard that the amount in controversy is over $75,0000.

Here, the party that seeks removal is the Former Employee.  The next section considers whether she has carried her burden.  The Court's conclusion: she has not.

## III. Analysis

### A.   Injunctive Relief

Start with the value of the injunction, and what it might be worth to the plaintiff here, the Ex-Employer.

As to the injunction, the Former Employee makes no factual or legal arguments apart from the salary argument discussed just below.  She bears the burden of showing the amount in controversy hurdle has been cleared.  See Rowland, 73 F.4th at 180; Kaufman, 561 F.3d at 151; accord, e.g., Dudley v. Eli Lilly & Co., 778 F.3d 909, 913 (11th Cir. 2014); Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 572 (6th Cir. 2001).  But as to the injunction, she does not meaningfully try to do so.

That leaves damages, themselves, to tip the amount-in-controversy scale.

### B.   Damages

Damages in this context are generally measured by the lost profits to the employer that were caused by an employee's breach of the non-compete agreement.  See Rosetta Tech. Grp., LLC v. DSR Mgmt., Inc., 2015 WL 4725415, at *4 (N.J. Super. Ct. App. Div. Aug. 11, 2015); Briggs v. GLA Water Mgmt., 2014 WL 1413934, at *7 (Ohio Ct. App. April 11, 2014); Preferred Sys. Sols., Inc. v. GP Consulting, LLC, 284 Va. 382, 398-99 (2012); NCMIC Fin. Corp. v. Artino, 638 F. Supp. 2d 1042, 1074 (S.D. Iowa 2009); Coffman v. Olson & Co., P.C., 906 N.E.2d 201, 210 (Ind. Ct. App. 2009); TruGreen Co., L.L.C. v. Mower Bros. Inc., 199 P.3d 929, 932-34 (Utah 2008); Trilogy Network Sys., Inc. v. Johnson, 144 Idaho 844, 846 (2007); Fishkin v. Susquehanna Partners, G.P., 2007 WL 560703, at *2 (E.D. Pa. Feb. 12, 2007); Moses H. Cone Mem'l Health Servs. Corp. v. Triplett, 167 N.C. App. 267, 275 (2004); Baker v. Hooper, 50 S.W.3d 463, 470 (Tenn. Ct. App.

10

2001); World Auto Parts, Inc. v. Labenski, 261 A.D. 2d 850, 851 (N.Y. Sup. Ct. App. Div. 1999); Lenco Pro, Inc. v. Guerin, 1998 WL 15936, at *1-2 (Mass. App. Div. Jan. 13, 1998); Scobell Inc. v. Schade, 688 A.2d 715, 720-21 (Pa. Super. Ct. 1997); Corson v. Universal Door Sys., Inc., 596 So. 2d 565, 570-72 (Ala. 1991); Robert S. Weiss & Assocs., Inc. v. Wiederlight, 208 Conn. 525, 542 (1988); Hyde v. C M Vending Co., Inc., 288 Ark. 218, 224-25 (1986); Camel Invs., Inc. v. Webber, 468 So. 2d 340, 342 (Fla. Dist. Ct. App. 1985); Gann v. Morris, 122 Ariz. 517, 519 (Ariz. Ct. App. 1979); Faust v. Parrott, 270 N.W.2d 117, 120 (Minn. 1978); Vermont Elec. Supply Co. v. Andrus, 135 Vt. 190, 192 (1977); Nat'l Bank of Alaska v. J.B.L. & K. of Alaska, Inc., 546 P.2d 579, 590 (Alaska 1976); Orkin Exterminating Co., Inc. v. Burnett, 160 N.W.2d 427, 429 (Iowa 1968); cf. Totaro, Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Co., L.L.C., 191 N.J. 1, 13-15 (2007); The Cmty. Hosp. Grp., Inc. v. More, 183 N.J. 36, 64 (2005); Barr & Sons, Inc. of Cherry Hill, N.J. v. Cherry Hill Ctr., Inc., 90 N.J. Super. 358, 374-75 (App. Div. 1966).

But the Former Employee makes no lost profits arguments.[10]

Instead, the Former Employee makes one argument: she notes the salary she made ($121,000 per year) when she worked for her Ex-Employer, and leaves it at that. See Declaration of Richette Gulitus ¶ 4.

But this has little on its face to do with lost profits.

Perhaps an argument is being suggested along these lines: (a) the Ex-Employer must have been making a profit of more than $75,000 on the Former Employee because she was making $121,000 per year,[11] and (b) that profit was lost when the Former Employee

---

[10]  For example, when she worked for the Ex-Employer, the Former Employee apparently serviced various clients.  See Complaint ¶ 11.  She now allegedly works for one of those clients.  See id. at ¶ 18.  The Former Employee does not argue the Ex-Employer has lost out on the profits that were associated with its servicing of the client the Former Employee now works for.

[11]  If the former employee was paid $121,000 per year, and if overhead, taxes, and other related expenses are put to one side, the former employee would need to generate gross revenues of around $196,000 to produce a $75,000 annual profit.  This is because revenue ($196,000) minus expenses ($121,000) equals profits ($75,000).

allegedly went to work for the Ex-Employer's client, in breach of the non-compete agreement.  See Objection to Report & Recommendation at 12.

But such an argument, if it indeed was being pressed,[12] would not be persuasive on the current record.

As to (a), the Ex-Employer presumably wanted to turn a profit on its Former Employee's work.  But there is no evidence as to whether the Ex-Employer was actually making such a profit.  And there is certainly not a preponderance of evidence that any profit from the Former Employee's work amounted to more than $75,000.  See Report & Recommendation at 9-10 ("[t]here is no reference, let alone estimation, of lost profits, business, or revenue").

To see the difficulty with (b), assume for the moment the Ex-Employer did in fact make a profit of more than $75,000 from its Former Employee's work --- say a profit of $100,000.

If so, the Ex-Employer may have lost out on $100,000 in profits when its Former Employee quit.

But to establish by a preponderance of the evidence that these lost profits may be recovered for breach of the non-compete agreement --- and therefore may count toward the amount in controversy threshold --- the Former Employee must differentiate between two things.

The first is the lost profits caused simply by the Former Employee's departure --- which was not itself allegedly illegal, and therefore cannot be the source of any recovery here.

The second is the lost profits caused by the Former Employee's departure to work for a competitor --- which was allegedly illegal, and therefore can generate a recovery.

Lost profits in the second category may be recoverable by means of this lawsuit, and therefore can be tallied up to see if they might reach more than $75,000.  By contrast, lost profits in the first category cannot be recovered in this lawsuit --- and

---

[12]  The Court does not view this argument as being raised, let alone meaningfully developed.  This is ample reason to disregard the argument, and the Court does so on that basis.  But because some might see the argument as at least potentially suggested by the Former Employee's papers, the Court takes an added step and addresses it briefly here on the merits.

therefore have no role to play in counting the damages potentially at stake here.[13]

But the Former Employee does not seek to differentiate between these two sorts of lost profits. She makes no argument as to how much of the Ex-Employer's overall lost profits can be attributed to the alleged illegality at issue here, a breach of the non-compete agreement --- versus how much of any lost profits might have been caused by the Former Employee simply quitting her job, which is neither generally illegal, see Witkowski v. Thomas J. Lipton, Inc., 136 N.J. 385, 397 (1994), nor claimed as a basis for any recovery here.

Without any such argument, there is no way to know whether even a hypothesized $100,000 in overall lost profits includes or does not include enough lost profits caused by the breach of the non-compete agreement to clear the $75,000 amount-in-controversy threshold.

To see the point in sharper relief, take a hypothetical.

---

[13] See Employee Noncompetition Law § 8:19 (Sept. 2023) ("the covenantee must generally introduce evidence which shows that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the damages . . . . where a number of factors may have just as likely caused the covenantee's loss, damages may not be recoverable"); see also Baker, 50 S.W.3d at 470 (not crediting as evidence of damages that "52 clients, previously serviced by defendants, did not return [to the plaintiff] after defendants left" because "[the plaintiff] could not say definitely that all of these went on to be serviced by" the defendants); Scobell Inc., 688 A.2d at 720-21 (not crediting evidence of damages due to a lost bid when there was not evidence of "the amount of the bid submitted [by the plaintiff] or whether or not [the plaintiff's] bid was second lowest to the [the defendant's] bid"); Wiederlight, 208 Conn. at 541-42 (affirming not awarding damages based on evidence the defendant "sold commercial insurance to customers in the restricted area during the covenant's operation" without more to show the plaintiff would have otherwise made those sales); Briggs v. GLA Water Mgmt., 2014 WL 1413934, at *8; TruGreen Co., L.L.C., 199 P.3d at 933; Corson, 596 So. 2d at 570-72; see generally Lane, Middleton & Co., 191 N.J. at 14; Donovan v. Bachstadt, 91 N.J. 434, 445 (1982); Coolest Refrigeration, LLC v. Zina's Salads, Inc., 2023 WL 8906149, at *3 (N.J. Super. Ct. App. Div. Dec. 7, 2023).

Imagine a gas station attendant who has agreed not to work at the next-door auto-repair shop. The day before a busy holiday weekend, the attendant quits, and this costs the gas station $100 in lost profits --- there is no one available on the weekend to pump gas. Will the loss of profits to the gas station be different depending on whether the attendant quits to work at (1) the auto repair shop (where she was contractually bound not to work) or (2) the local barber shop (a choice she was free to make)?

Probably not. And this means the gas station attendant's breach of her non-compete agreement did not actually cause any lost profits to the gas station over the holiday weekend. What caused the lost profits was simply her leaving her job, not the specific new job she moved on to.

The point can be generalized: when an employee subject to a non-compete agreement quits a job, even if the employer loses profits as a result, that does not, without more, establish that the loss of profits was caused, as it must be, by the breach of the agreement. It may have just been caused by the employee quitting --- and a non-compete agreement does not make that unlawful.

All of this is dispositive.

The Former Employee bears the burden of proof. See Part II.B. But she does not try to show that the Ex-Employer could recover at least $75,000 in lost profits, because she does not say anything about which lost profits are potentially recoverable (because they can be chalked up to her breach of the non-compete agreement), versus those lost profits that are not recoverable (because they were caused simply by her leaving for another job, regardless of what that job might have been).[14]

*     *     *

A summary of where things stand.

The Former Employee presses no particular argument as to the value of the injunction being sought. And she presses no argument about the Ex-Employer's lost profits.

---

[14] It can be challenging to tease these apart. That is why parties to non-compete agreement often rely on liquidated damages clauses.

Rather, the Former Employee rests on a single allegation: the salary she earned from the Ex-Employer.

But she cannot carry her burden on that basis, for two reasons.

First, her old salary says little, if anything, about her Ex-Employer's lost profits.

And second, to be relevant to determining the amount in controversy here, the Former Employee must show that any lost profits were caused by the alleged breach of the non-compete agreement, and not caused simply by the Former Employee quitting.  Why?  Because only lost profits caused by the alleged breach of the non-compete can lead to a recovery --- and to trigger the Court's diversity jurisdiction there must be a showing, by a preponderance of the evidence, that a recovery of at least $75,000 is in play.[15]

## IV.  Conclusion

In light of the above, the conclusion of the Report and Recommendation is adopted, and the motion to remand is granted.


IT IS on this 12th day of April, 2024, so **ORDERED**.

Michael E. Farbiarz, U.S.D.J.

---

[15]  Given this conclusion, there is no need to address whether and to what extent the Court might consider the Ex-Employer's stipulation that the money damages here are not more $70,000. See Motion to Remand at 3.